| | | |
|---|---|---|
| JENNA AMACHER, | ) | |
| | ) | Case No. 4:23-cv-40 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Susan K. Lee |
| CITY OF TULLAHOMA, TENNESSEE, *et al*. | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM AND ORDER

Before the Court are motions for judgment on the pleadings filed by Defendants Scott Van Velsor, Jim Woodard, Ray Knowis, Jennifer Moody, and the City of Tullahoma, Tennessee (the "City"). (Docs. 29, 31, 33.) For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motions for judgment on the pleadings.

## I. BACKGROUND

At all times relevant to this action, Plaintiff Jenna Amacher was an alderman and the mayor pro tem for the City. (Doc. 1, at 2.) According to Amacher, she has a reputation for supporting conservative ideals and advocates for those ideals as an alderman and on social-media platforms, including Facebook. (*Id*. at 2–3.) More specifically, Amacher frequently posts videos on Facebook Live criticizing City policies and City officials, as well as advocating "for her own ideals." (*Id*. at 3.) As one example, Amacher posted a video criticizing Defendant Jennifer Moody, the City Administrator, for mishandling a zoning dispute. (*Id*.) On another occasion, Amacher held a "redneck Christmas party with her family," which included the display of a

Confederate flag. (*Id.*) Although Amacher maintains that the party was "an act of satire," Defendant Ray Knowis, the mayor of the City, "went on the record" and "rebuk[ed]" her for "her speech." (*Id.*)

In 2022, Amacher spoke out opposing the City's "2040 Comprehensive Development Plan," criticizing its policies "toward high-density residential housing, the expansive use of planned-unit developments, increased traffic, . . . as well as massive infrastructure costs for the taxpayers." (*Id.* at 4.) Amacher alleges that she made "enemies" as a result of her statements, including Knowis and Moody, as well as Defendants Scott Van Velsor and Jim Woodward, private citizens "who were upset that the defeat of the 2040 Plan would impair their land development work." (*Id.*) Amacher also spoke out about the City's treatment of Kurt Glick, a former City employee, who previously sued the City in federal court. (*Id.*)

In retaliation for her speech about the City's policies, Amacher alleges that Knowis and Moody "called upon private citizens to begin drafting a petitioner for [her] ouster" because she did not reside Tullahoma, Tennessee. (*Id.* at 5.) According to Amacher, she was in the process of moving from her residence in Tullahoma to another location, also in Tullahoma, where she intended to build a new house. (*Id.*) Due to an unspecified "natural disaster" and construction delays, Amacher temporarily stayed with friends and family "outside the city of Tullahoma" while continuing construction on her new home. (*Id.*) Nonetheless, Amacher alleges that Moody, Knowis, Woodard, and Van Velsor conspired to initiate frivolous proceedings to oust her as an alderman, with Woodward and Van Velsor collecting petition signatures based on her renouncing her Tullahoma residency. (*Id.* at 5–6.) Amacher further alleges that, after Woodward and Van Velsor collected the requisite signatures, Moody and Knowis had the district attorney draft a petition to remove her from office, with Van Velsor serving as the "relator"

plaintiff and Woodward serving as the "cost surety."[1]  (*Id*. at 7.)  Amacher alleges that

Defendants knew their petition was meritless, but nonetheless proceeded to embarrass her and

coerce her into resigning from her position as alderman.[2]  (*Id*. at 7.)  The district attorney filed a

Petition for Writ of Quo Warranto against Amacher in the Chancery Court for Coffee County,

Tennessee (Doc. 30-1), and on March 17, 2023, the chancery court found that Amacher was a

legal resident of Tullahoma and dismissed the petition against her.  (Doc. 1, at 8.)

Amacher initiated the present action on October 10, 2023, asserting claims under 42

U.S.C. § 1983 against all Defendants for conspiring to violate and violating her free-speech

rights and her substantive due process rights.  (*Id*. at 10–11.)  Amacher separately asserts claims

against Moody, Knowis, Van Velsor, and Woodard for malicious prosecution and abuse of

process under Tennessee law.  (*Id*. at 12.)  Defendants have moved for judgment on the

pleadings, arguing that Amacher's complaint fails to state a claim upon which relief can be

granted (Docs. 29, 31, 33), and Defendants' motions are ripe for the Court's review.

---

[1] A copy of the petition for writ quo warranto is attached to Woodward and Van Velsor's motion
for judgment on the pleadings and is signed by the district attorney.  (Doc. 30-1.)  The Court can
consider the petition, as well as other documents from the state-court quo warranto proceedings,
without converting Defendants' motions for judgment on the pleadings to a motion for summary
judgment because these documents are public records.  *See Rondigo, L.L.C. v. Twp. of
Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (providing that courts may consider "exhibits
attached [to pleadings], public records, items appearing in the record of the case and exhibits
attached to defendant's motion to dismiss so long as they are referred to in the complaint and are
central to the claims contained therein, without converting the motion to one for summary
judgment").  The Court cannot, however, consider the Amacher's declaration attached to her
response opposing Defendants' motions for judgment on the pleadings (Doc. 38-1) because the
declaration is outside the pleadings and is not a public record.  *See Galaxy Foods LLC v. Aryz
Trading LLC*, Case No. 23-11476, 2023 WL 8025818, at *4 (E.D. Mich. Nov. 20, 2023.

[2] Amacher further alleges that:  (1) Knowis and Moody sent the district attorney to insult her in
public and call on her to resign from her position as alderman; (2) Knowis and Moody sent
Tullahoma police officers to "stalk and attempt to intimidate" her; and (3) at the quo warranto
trial, the "prosecution went out of its way to embarrass [her], questioning her . . . about her
income taxes and sex life."  (Doc. 1, at 7–8.)

## II.    STANDARD OF LAW

According to Federal Rule of Civil Procedure 8, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(c).  A Rule 12(c) motion for judgment on the pleadings is analyzed using the same standards that apply to Rule 12(b)(6) motions for failure to state a claim.  *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).  Thus, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.  For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint.  *Thurman*, 484 F.3d at 859.  This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859.  This factual matter must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    ANALYSIS

### A.  Section 1983 Claims

In her complaint, Amacher asserts claims under 42 U.S.C. § 1983, alleging that Defendants conspired to violate her constitutional rights to free speech and substantive due process. (Doc. 1, at 9–11.) Under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights . . . secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To succeed on a claim under § 1983, a plaintiff must show: "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citations omitted). When a plaintiff directs a § 1983 claim against multiple defendants, a third element must be met: because a plaintiff "cannot generically hold one defendant liable for another's actions," "he must allege that each defendant, through that defendant's own actions, subjected him to the constitutional deprivation." *Rudd v. City of Norton Shores, Mich.*, 977 F.3d 503, 512 (6th Cir. 2020) (citing *Jane Doe v. Jackson Local Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 934 (6th Cir. 2020)) (cleaned up). Nonetheless,

> to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting [ ] 'under color' of law for purposes of § 1983 actions.

*Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). As a result, "claims of conspiracies between private and state actors, if adequately alleged, generally suffice to establish state action on the part of private actors for the purposes of deciding a motion to dismiss." *Rudd*, 977 F.3d at 512. Additionally, although § 1983 typically precludes "holding one defendant vicariously liable for another's actions," conspirators can be found liable for a tort committed by a coconspirator in furtherance of the conspiracy." *Id*. (explaining that if a plaintiff "plausibly allege[s] a conspiracy against a defendant, the conspiracy allegation offers a 'conceptual spring' for holding that defendant liable for the actions of another defendant").

### i.  Amacher's Conspiracy Allegations

Before addressing Amacher's § 1983 claims, the Court must first determine whether she has adequately pled that Defendants and other individuals conspired to violate her constitutional rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). To plead a civil conspiracy under §1983, a plaintiff must allege that: "(1) a 'single plan' existed, (2) defendants 'shared in the conspiratorial objective' to deprive plaintiffs of their constitutional rights, and (3) 'an overt act was committed in furtherance of the conspiracy that caused injury' to plaintiffs." *Siefert v. Hamilton Cty.*, 951 F.3d 753, 767 (6th Cir. 2020). "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy and each conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Bazzi*, 658 F.3d at 602. It is, however, "well-settled that conspiracy claims must be pled with some degree of specificity." *Siefert*, 51 F.3d at 767; *see also Rudd*, 977 F.3d at 517 ("[A] complaint must identify the alleged conspiracy with more than vague and conclusory allegations."). In evaluating a motion for judgment on the pleadings, "a plaintiff's specific

allegations of a conspiracy will suffice as long as they are plausible . . . even if a defendant's briefing identifies a more likely alternative explanation for what occurred." *Rudd*, 977 F.3d at 517.

In this case, Amacher's complaint includes sufficient allegations that Moody, Knowis, Woodward, and Van Velsor conspired to violate her constitutional rights. In her complaint, Amacher alleges that, in retaliation for her protected speech, Moody, Knowis, Woodward, and Van Velsor conspired to instigate a legal action seeking to have her ousted as an alderman "for supposedly having renounced her Tullahoma citizenship . . . even though they really knew that she had not." (Doc. 1, at 5–6.) Amacher further alleges that: (1) Moody and Knowis convinced the district attorney to file the quo warranto action; (2) Woodward and Van Velsor collected citizen signatures in support of the action to remove Amacher from office; and (3) Van Velsor acted as the "relator" plaintiff in the quo warranto proceeding; and (4) Woodward served as the cost surety. (*Id*. at 6–7.) Such allegations are sufficient to plausibly allege that a single plan existed among Moody, Knowis, Woodward and Van Velsor, that they acted in concert to have Amacher removed from her position as alderman, that they shared this conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy.

### ii.  *Violation of Free Speech Rights*

Because Amacher has plausibly alleged that Moody, Knowis, Woodward and Van Velsor engaged in a conspiracy to have her removed from her position as alderman, the Court must next determine whether her complaint states a claim under § 1983 against these defendants for violation of her free speech rights. The First Amendment prohibits state actors from "abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. When a state actor retaliates against an individual for

exercising his First Amendment freedoms, that retaliation "is itself a violation of the Constitution." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)); *see also Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) ("[T]he injury asserted is the retaliatory accusation's chilling effect on [the plaintiff's] First Amendment rights . . . We hold that [his] failure to demonstrate a more substantial injury does not nullify his retaliation claim."), *cert. denied,* 524 U.S. 936 (1998); *Rudd*, 977 F.3d at 512 ("As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech.")

To state a First Amendment claim under § 1983, a plaintiff must allege that: "(1) [s]he engaged in protected conduct; (2) the defendants took an adverse action against [her]; and (3) a causal connection exists between the two." *Rudd*, 977 F.3d at 513. "[A]n adverse action" is any action "that is '*capable*' of deterring a person of ordinary firmness from exercising the constitutional right in question." *Id*. at 514 (emphasis in original). Although it would "trivialize the First Amendment" if a citizen could "sue over any governmental nuisance, no matter how inconsequential, . . . nothing justifies harassing people for exercising their constitutional rights." *Id*.. As a result, "the deterrent effect on speech 'need not be great' to be actionable." *Id*. (quoting *Thaddeus-X*, 175 F.3d at 397.) To adequately plead causation, a plaintiff must allege that the defendants' retaliatory animus was the but-for cause of their actions, meaning that they would not have taken those actions but for the fact that the plaintiff engaged in protected conduct."[3] *Id*. at 515 (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). Additionally, a

---

[3] The Sixth Circuit, however, has noted that "there is some uncertainty . . . over whether a plaintiff must prove this but-for test or whether the plaintiff need only show that the protected conduct was a motivating factor for the action (which switches the burden to the defendant to prove the absence of but-for causation)." *Rudd*, 977 F.3d at 515 (citing *Spithaler v. Smith*, 803 F. App'x 826, 829–30 (6th Cir. 2020)).

plaintiff premising his First-Amendment-retaliation claim on a conspiracy must plead enough facts against each defendant to connect that defendant to the alleged constitutional deprivation. *See id*.

In this case, Amacher's complaint sufficiently alleges that Moody, Knowis, Woodward and Van Velsor conspired to retaliate against her for engaging in protected speech and, therefore, states a claim under § 1983 for First Amendment retaliation. Defendants do not dispute that Amacher engaged in constitutionally-protected speech, and her allegation that they conspired with the Tullahoma district attorney to file a baseless lawsuit seeking to have her ousted as an alderman in retaliation for exercising her free-speech rights, if proven true, is capable of deterring a person of ordinary firmness from exercising her free-speech rights. (Doc. 1, at 10.) Amacher has also plausibly alleged that Defendants would not have taken the foregoing actions but for the fact that she engaged in constitutionally protected speech. (*Id*. at 5–9.) Accordingly, Amacher has stated a claim for First Amendment retaliation under § 1983 against Moody, Knowis, Woodward and Van Velsor.

### iii. *Violation of Substantive Due Process Rights*

Defendants next argue that Amacher has failed to state a claim under § 1983 for violation of her substantive-due-process rights because she has not alleged that she was deprived of a protected property or liberty interest. (Doc. 30, at 8–9; Doc. 32, at 9–10.) Substantive due process "specifically protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed," *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal quotation marks and citations omitted), and freedom from arbitrary government action that "shocks the conscience and violates the decencies

of civilized conduct." *Cty. of Sacramentio v. Lewis*, 523 U.S. 833, 846-47 (internal quotation marks omitted). To state a claim for a substantive-due-process violation under § 1983, a plaintiff must allege that an "arbitrary and capricious government action deprived [him] of a constitutionally protected property interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 707 (6th Cir. 2005). "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). As a result, "[p]rinciples of substantive due process do not provide an alternative path and standard for adjudicating [a] First Amendment claim, as the First Amendment is incorporated to the states through the Fourteenth Amendment." *Doe v. Rausch*, 461 F. Supp. 3d 747, 774 (E.D. Tenn. 2020) (citing *United States v. Carolene Prods. Co.*, 304 U.S. 144, 153 n.4 (1938)).

In this case, Amacher's complaint fails to state a § 1983 claim against Moody, Knowis, Woodward and Van Velsor for violating her substantive due process rights. Substantive due process does not provide an alternate path for Amacher to adjudicate her claim based on violation of her free-speech rights, and she concedes that she does not possess a property interest in her political office (*see* Doc. 38, at 5). Amacher nonetheless contends that she has stated a claim against Defendants for violating her substantive-due-process rights because their actions "shock the conscious," and because she lost money and suffered damage to her emotional wellbeing and reputation. (Doc. 38, at 5; *see also* Doc. 1, at 11.) As the Sixth Circuit has explained, however, "the 'shocks the conscious' strain of successful substantive due process claims is recognized 'in the exclusive context of cases involving physical abuse.'" *Puckett v.*

*Lexington-Fayette Urban Cty. Gov't*, 566 F. App'x 462, 472 (6th Cir. 2014). Amacher's

allegations do not involve physical abuse or any other actions that shock the conscious in a way

that rises to the level of a constitutional violation. As a result, Amacher's complaint fails to state

a § 1983 claim based on a violation of her substantive due process rights. Accordingly, the

Court will **GRANT** Defendants' motions for judgment on the pleadings as it relates to

Amacher's § 1983 substantive due process claim.

### iv. *Qualified Immunity*

Moody and Knowis also argue that the Court should dismiss Amacher's § 1983 claims

against them because they are entitled to qualified immunity. (Doc. 32, at 11–13.) The doctrine

of qualified immunity shields individual government officials from damages under § 1983 "as

long as their actions did not violate clearly established statutory or constitutional rights of which

a reasonable person would have known." *Sumpter v. Wayne Cty.*, 868 F.3d 473, 480 (6th Cir.

2017) (internal quotation marks omitted) (quoting *Chappell v. City of Cleveland*, 585 F.3d 901,

907 (6th Cir. 2009)). In deciding whether a defendant is entitled to qualified immunity at the

summary-judgment stage, the Court employs a two-part test. *Id.* (citing *Pearson v. Callahan*,

555 U.S. 223, 232, 236 (2009)). First, a court determines whether the facts, viewed in the light

most favorable to the plaintiff, show that the official violated a constitutional right. *Holzemer v.*

*City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2012) (citations omitted). Second, if a

constitutional right was violated, a court determines whether the right was clearly established at

the time the violation occurred. *Id.* (citations omitted). The plaintiff bears the burden of

"satisfy[ing] both inquires in order to defeat the assertion of qualified immunity." *Sumpter*, 868

F.3d at 480 (citing *Wesley v. Campbell*, 779 F.3d 421, 428–29 (6th Cir. 2015)).

A right is clearly established when, "at the time of the challenged conduct, the contours

of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citations omitted). Courts should not attempt to define a particular right at a high level of generality. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 742). Instead, they should assess whether it is clearly established that the particular conduct is unconstitutional. *Id.* ("This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (citations and internal quotation marks omitted)). Still, "[i]t is not necessary[] . . . 'that the very action in question has previously been held unlawful.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866–67 (2017) (quoting *Anderson*, 483 U.S. at 640); *see also id.* at 1867 ("[A]n officer might lose qualified immunity even if there is no reported case 'directly on point.'" (citations omitted)). That is, "[t]here need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts," as long as the defendants had "fair warning" that their conduct violated the plaintiff's rights. *Goodwin v. City of Painsville*, 781 F.3d 314, 325 (6th Cir. 2015) (citations omitted); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

The burden is on the plaintiff to show a defendant is not entitled to qualified immunity, but that burden is modest in connection with a motion for judgment on the pleadings: reading the complaint in the light most favorable to the plaintiff, it need only be plausible that an official's acts violated a clearly established constitutional right. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Heyne v. Metro. Nashville Pub. Schs.*, 655

12

F.3d 556, 562 (6th Cir. 2011)). And although qualified immunity is available in connection with a motion for judgment on the pleadings, it is generally inappropriate to grant such a motion on the basis of qualified immunity. *See Anders v. Cuevas*, 984 F.3d 1166, 1175 (6th Cir. 2021) (explaining that it is generally in appropriate to grant a motion to dismiss under Rule 12(b)(6) on the basis of qualified immunity). Rather, the issue is usually resolved at summary judgment to allow for "development of the factual record," which is "frequently necessary to decide whether the official's actions violated clearly established law." *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023) (citations and quotations omitted).

In this case, reading the complaint in the light most favorable to Amacher, she has plausibly alleged that Moody and Knowis violated a clearly established constitutional right by conspiring to retaliate against her for exercising her free speech rights. The Sixth Circuit has explained that it has "long recognized that a public employer may not retaliate against an employee for her exercise of constitutionally protected speech." *Buddenberg v. Weisdack*, 939 F.3d 732, 741 (6th Cir. 2019); *see also Chappel v. Montgomery Cty. Fire Protection Dist. No. 1*, 131 F.3d 564, 576–77 (6th Cir. 1997) ("All public officials have been charged with knowing that public employees may not be disciplined for engaging in speech on matters of public concern."). Although Amacher may not be a county employee, the Sixth Circuit clearly recognizes that public officials may not retaliate against individuals for exercising free-speech rights. Based on Amacher's plausible allegations, it is more appropriate to develop the factual record and resolve any issues regarding qualified immunity in connection with a motion for summary judgment. Accordingly, the Court will **DENY** Moody and Knowis's motion to the extent they contend that they are entitled to qualified immunity on Amacher's § 1983 claims against them.

### v. Municipal Liability

The City separately moves for judgment on the pleadings, arguing that Amacher has not sufficiently alleged a basis for municipal liability. (Doc. 34, at 3–6.) A municipality cannot be held liable under a respondeat superior theory for § 1983 violations. *Spears v. Ruth*, 589 F.3d 249, 256 n.6 (6th Cir. 2009) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (stating that municipalities "are not vicariously liable under § 1983 for their employees' actions" (citations omitted)). Rather, municipalities may only be liable where the plaintiff establishes that the municipality engaged in a "policy or custom" that was the "moving force" behind the deprivation of the plaintiff's rights. *Monell*, 436 U.S. at 694; *see also Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) ("Under *Monell*, the [defendants] cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom . . . leads to, causes, or results in the deprivation of a constitutionally protected right."). "A litigant can show a policy or custom through reference to: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016).

When a government "chooses a course of action tailored to a particular situation and not intended to control decisions in later situations," it can still constitute official government policy if it is made by that government's authorized decisionmakers. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). However, municipal liability attaches only where "the decisionmaker possesses final authority to establish municipal policy *with respect to the action ordered*." *Id.* (emphasis added). "The fact that a particular official—even a policymaking official—has

discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481–82. Generally, for municipal liability to attach, the authorized decisionmaker must make a "deliberate choice to follow a course of action . . . made from among various alternatives." *Id.* at 483.

In this case, Amacher's complaint fails to include allegations which, if true, provide a basis to impose municipal liability on the City. Amacher's complaint asserts in general and conclusory fashion that the City is liable under § 1983 because Moody and Knowis are "final policymaker[s] for the City." (Doc. 1, at 10–11.) Amacher, however, fails to include any factual allegations suggesting that Knowis and Moody possess final decision-making authority with respect to the district attorney's decision to file the quo warranto action against her. Rather, Amacher appears to argue that simply because Knowis and Moody are mayor and city administrator they possess final decision-making authority as to all decisions made by the City. Such allegations are nothing more than unsupported legal conclusions couched as factual allegations. As a result, Amacher has failed to plausibly allege a basis for asserting municipal liability against the City based on Moody and Knowis's actions. Accordingly, the Court will **GRANT** the City's motion for judgment on the pleadings as to Amacher's § 1983 claims against it.

### B. Amacher's State-law Claims

#### i. Civil Conspiracy

Under Tennessee law, "[a]n actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) (quoting

*Trau–Med of Am., Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 703 (Tenn. 2002)). "Conspiracy claims must be pled with some degree of specificity. *McGee v. Best,* 106 S.W.3d 48, 64 (Tenn.Ct.App.2002). Conclusory allegations unsupported by material facts will not be sufficient to state such a claim. *Kincaid v. SouthTrust Bank,* 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). Additionally, a claim for civil conspiracy "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's Carpet & Floor Coverings, Inc. v. McCormick,* 247 S.W.3d 169, 180 (Tenn. Ct. App.2007).

For the same reasons stated in connection with her §1983 claims (*see* § III.A.i), Amacher has plausibly alleged the existence of a conspiracy between Moody, Knowis, Woodward and Van Velsor. As a result, the Court must determine whether Amacher has plausibly alleged claims for malicious prosecution and abuse of process committed pursuant to the alleged conspiracy.

### ii. Malicious Prosecution

Defendants argue that Amacher fails to state a claim for malicious prosecution because they did not bring any legal action against her; rather, the District Attorney, who is not named as a defendant in this action, filed the petition for writ of quo warranto against Amacher. To state a claim for malicious prosecution under Tennessee law, a plaintiff must allege that: "(1) a prior suit or judicial proceeding was instituted without probable cause, (2) defendant brought such prior action with malice, and (3) the prior action was finally terminated in plaintiff's favor." *Roberts v. Fed. Exp. Corp.*, 842 S.W.2d 246, 247–48 (Tenn. 1992) (citations omitted). As the Tennessee Court of Appeals has explained, "[o]ne who causes another's prosecution by false statements or misrepresentations . . . with an improper motive is liable for malicious prosecution, although he does not file a complaint or actually procure the prosecution." *Davis v.*

*Tenn. Wildlife Res. Agency*, No. W2005-00406-COA-R3-CV, 2006 WL 861352, at *5 (Tenn. Ct. App. Apr. 5, 2006) (quoting *Cohen v. Ferguson*, 336 S.W.2d 949, 954 (Tenn. Ct. App. 1959)). Additionally, the Tennessee Court of Appeals has recognized that individuals can conspire to maliciously prosecute another individual. *See Hardin v. Caldwell*, 695 S.W.2d 189 (Tenn. Ct. App. 1985).

In this case, Amacher has plausibly alleged that Moody, Knowis, Woodward, and Van Velsor conspired to maliciously prosecute her by providing false statements or misrepresentations to the district attorney who filed the petition for quo warranto seeking to have Amacher ousted as an alderman. Construing the allegations in the complaint in the light most favorable to Amacher, Moody, Knowis, Van Velsor and Woodward convinced the district attorney to file a petition to oust her as an alderman based on personal animus and based on the fact that she did not live in Tullahoma even though they ultimately knew the lawsuit would be unsuccessful. Additionally, in ruling in Amacher's favor on the petition after an evidentiary hearing, the Chancery Court for Coffee County, Tennessee, explained that Van Velsor, as the relator, "showed no evidence that Amacher abandoned her intention" to keep her residence in Tullahoma." (Doc. 32-2, at 4.) If proven true at trial, these facts could support the existence of a conspiracy and the imposition of liability for malicious prosecution on Moody, Knowis, Van Velsor, and Woodward. Accordingly, the Court will **DENY** their motions for judgment on the pleadings to the extent they seek dismissal of Amacher's claims against them for malicious prosecution.

### iii. Abuse of Process

To state a claim for abuse of process under Tennessee law, a plaintiff must allege: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would

be proper in the regular prosecution of the charge." *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. 1999). "Abuse of process differs from malicious prosecution in that abuse of process lies for the improper use of process *afte*r it has been issued, not for maliciously causing process to issue." *Id*. "An action for abuse of process cannot be sustained where the process was employed to perform no other function than that intended by law. . . . The bad intent must culminate in an actual abuse of the process by perverting it to a use to obtain a result which the process was not intended by law to effect." *Id*. (internal citations and quotations omitted). "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Id*. As the Supreme Court of Tennessee has explained:

> The test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do.

*Id*. Stated another way, abuse of process "only deals with perversions of the tools of litigation after a lawsuit has commenced." *Montpelier v. Moncier,* No. E201600246COAR3CV, 2017 WL 2378301, at *6 (Tenn. Ct. App. June 1, 2017). "A plaintiff must allege that the defendant employed a specified legal process for a purpose which it was not designed in order to compel a party to do something that it could not be compelled to do by the use of that process." *Id*.

In this case, Amacher's complaint fails to state a claim for abuse of process. Amacher has not identified any tool of litigation used after the quo warranto proceeding was initiated that was used for some purpose which it was not designed and that obtain a result which the process was not intended by law to effect. As a result, Amacher has not alleged that Moody, Knowis, Woodward and Van Velsor used any process other than such as would be proper in the regular

prosecution of the charge.  Accordingly, the Court will **GRANT** Defendants' motions for judgment on the pleadings to the extent they seek dismissal of Amacher's claim for abuse of process under Tennessee law.

### iv.    *Tennessee Public Participation Act*

Woodward and Van Velsor alternatively argue that the Court should dismiss Amacher's claims against them pursuant to Tennessee Code Annotated § 20-17-104, also known as the Tennessee Public Participation Act ("TPPA"), which permits a party to petition the court for dismissal if a "legal action is filed in response to a party's exercise of free speech."  This Court, however, has previously found that state anti-SLAPP statutes do not apply in federal court.  *See generally Apex Bank v. Rainsford*, Case No. 3:20-cv-198, 2020 WL 12840460 (Sept. 16, 2020).  Accordingly, the Court will **DENY** Woodward and Van Velsor's motion to the extent it seeks dismissal of Amacher's claims pursuant to the TPPA.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions for judgment on the pleadings (Docs. 29, 31, 33) are **GRANTED IN PART** and **DENIED IN PART**.  The following claims are **DISMISSED WITH PREJUDICE**:  (1) Amacher's § 1983 claims based on violations of her substantive due process rights; (2) Amacher's § 1983 claims against the City; (3) Amacher's claim for abuse of process under Tennessee law.

SO ORDERED.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**