IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

JENNA AMACHER,

    Plaintiff

v.

CITY OF TULLAHOMA, TENNESSEE,

JENNIFER MOODY,                                      **4:23-cv-40-TRM-SKL**

RAY KNOWIS,

SCOTT VAN VELSOR, AND

JIM WOODARD,

    Defendants

---

## AMENDED COMPLAINT

---

The Plaintiff, Jenna Amacher, hereby brings suit against the Defendants as follows:

### INTRODUCTION

1) This lawsuit is about the abusive use of state governmental power to intimidate and harm a city lawmaker in vindictive retaliation for her speech and political views.

1

## THE PARTIES

2) The Plaintiff, JENNA AMACHER, is a citizen and bone fide resident of Tullahoma, Tennessee. She also serves as an alderman and as the mayor pro tem of that same city.

3) The CITY OF TULLAHOMA, TENNESSEE is a political subdivision and municipality of the State of Tennessee. It is located in Coffee and Franklin Counties.

4) JENNIFER MOODY, during most of the relevant events discussed, was the City Administrator for the CITY OF TULLAHOMA. But to be clear, she is being sued individually.

5) RAY KNOWIS, during the relevant events discussed here, was the Mayor of the CITY OF TULLAHOMA. But to be clear, he is being sued individually.

## FACTUAL BACKGROUND

6) In August 2020, Plaintiff JENNA AMACHER assumed the position of alderman on the Board of Mayor and Aldermen for the CITY OF TULLAHOMA.

7) Upon taking the position, AMACHER gained a reputation for supporting conservative ideals, as well as generally calling out misconduct or misfeasance within the City government in an outspoken manner.

8) In addition to advocating for her ideals and positions on the floor of City Hall itself, AMACHER developed a pattern of speaking out in more unofficial venues, including on Facebook.

9) Frequently AMACHER would post videos on Facebook Live. In the videos, she would often criticize city policies, criticize city officials, or simply advocate for her own ideals.

10) As one example, during October 2020, AMACHER posted a video criticizing City Administrator JENNIFER MOODY for illegally mishandling a zoning dispute, namely a case involving a local business named London's. The video ultimately gained roughly 7,000 views (a fairly large number compared to the population of Tullahoma).

11) Afterward, MOODY responded with comments indicating that AMACHER's speech in said video had angered her.

12) As time went by, MOODY continued to hold a grudge. She remained strongly antagonistic to AMACHER.

13) Another occasion where AMACHER drew the ire of Mayor RAY KNOWIS. Namely, as an act of satire, AMACHER held a redneck Christmas party with her family. Among other decorations, the Confederate flag was displayed.

14) Subsequent to this event involving the Confederate flag, Mayor KNOWIS went on record rebuking AMACHER for her speech.

15) On a more serious topic, AMACHER went on record in 2022 as opposing the "2040 Comprehensive Development Plan," a proposal that would have directed the City's policies toward high-density residential housing, the expansive use of planned-unit developments, increased traffic, and likely increased crime, as well as massive infrastructure costs for the taxpayers. On Facebook Live and elsewhere, she publicly decried the plan as "progressive urbanization" that would dramatically grow Tullahoma's population while transforming its buildings, infrastructure, and culture.

16) By speaking out against the 2040 Comprehensive Development Plan, AMACHER made enemies. The enemies included not only Administrator MOODY (again), but also Mayor RAY KNOWIS, and citizens SCOTT VAN VELSOR and JIM WOODARD who were upset that the defeat of the 2040 Plan would impair their land development work.

17) In 2022, AMACHER spoke out again on Facebook Live, calling out the TULLAHOMA CITY GOVERNMENT for its illegal or unconstitutional treatment of former employee Kurt Glick.

18) Again, AMACHER's speech angered city officials, especially given that Glick already was suing the City in federal court.

19) These listed matters were not the only occasions when AMACHER spoke out on matters of public concern, but simply serve as examples of how

4

AMACHER exercised her First Amendment rights and thereby gained the animosity of the various Defendants.

20) In retaliation for AMACHER's protected speech or otherwise based on personal animus, Defendants JENNIFER MOODY and RAY KNOWIS called upon private citizens to begin drafting a petition for AMACHER's ouster.

21) For background, during early 2021, AMACHER was in the process of moving from her residence in Tullahoma to another location, also in Tullahoma, where she intended to build a new house.

22) Due primarily to a natural disaster, however, in addition to construction delays caused by financial and logistical setbacks, AMACHER temporarily stayed at other locations with friends and family while continuing the construction on her new home in Tullahoma. One of these locations where AMACHER frequently stayed was outside the city limits of Tullahoma.

23) Regardless of where Amacher physically slept, Tennessee law makes clear that legal residence for voting or electoral purposes is based on domicile — only be forfeited if a person intends to make a new jurisdiction or district her permanent home. Tenn. Code Ann. § 2-2-122; *cf. In re: Conservatorship of Clayton*, 914 S.W.2d 84 (Tenn. Ct. App. 1995) ("A person may have more than one residence but only one domicile or legal residence.").

24) In responding to criticism that she had lost her legal residence in Tullahoma by temporarily staying elsewhere, AMACHER spoke directly to the

5

Mayor and Aldermen at City Hall, and she also posted her legal analysis on Facebook. In both venues, she explained clearly and concisely the applicable law in Tennessee on legal residency. She explained that she was still building a home in Tullahoma and intended to remain a resident there. And she explained that she had never given up her domicile in the City.

25) Notwithstanding the law, Administrator MOODY and Mayor KNOWIS conspired among themselves, and also with private citizens WOODARD and VAN VELSOR, to instigate frivolous proceedings to oust Plaintiff AMACHER.

26) WOODARD and VAN VELSOR collected signatures calling for the ouster of AMACHER, for supposedly having renounced her Tullahoma citizenship by staying elsewhere as discussed, even though they really knew that she had not.

27) After the petition was collected, Administrator MOODY and Mayor KNOWIS called upon the services of the local District Attorney. Notably, this District Attorney was another individual who hated AMACHER. Partly he hated her because he disagreed with her politics, but most of all, he hated her because she had sued the District Attorney's Office before for misconduct.

28) Although the District Attorney had no experience prosecuting aldermen for having renounced their citizenship, and even though he had stayed out of other such political disputes previously, MOODY and KNOWIS successfully drafted him to file a Petition for Writ of Quo Warranto against AMACHER. If successful, their lawsuit would have removed her from office.

6

29) Defendants VAN VELSOR and WOODARD also conspired with the aforementioned individuals to carry out the same malicious prosecution. As for their biggest roles once the lawsuit got started, VAN VELSOR served as the official "relator" plaintiff in the proceeding, and Defendant WOODARD serving as the cost surety.

30) MOODY, KNOWIS, VAN VELSOR, WOODARD, and the District Attorney all knew that the prosecution was meritless, and thus incapable of succeeding unless they could somehow convince the court simply to abandon the law.

31) In fact, the District Attorney had previously called upon the Tennessee Bureau of Investigation to investigate Amacher for supposed voter fraud, alleging the same residency issue. The Bureau had already declined to prosecute because it knew that AMACHER was innocent and that she was a resident of Tullahoma.

32) Consequently, the conspirators all knew that their plot could not realistically succeed in the courtroom.

33) Nonetheless, they engaged in the prosecution primarily for the purpose of embarrassing and bullying AMACHER, making her spend legal fees, and trying to coerce her to resign.

34) On multiple occasions, they sent the District Attorney to confront AMACHER in public, insulting her publicly and calling on her to resign in the face of these difficulties.

7

Case 4:23-cv-00040-TRM-MJD   Document 56   Filed 02/19/25   Page 7 of 13   PageID #: 475

35) Although the District Attorney had no procedural right to make such pronouncements, Mayor KNOWIS bent the rules in the District Attorney's favor so that he could bully AMACHER.

36) Despite the pressures financial and otherwise, however, AMACHER chose not to resign.

37) While prosecuting the quo warranto case against AMACHER, Administrator MOODY and Mayor KNOWIS sent out hordes of Tullahoma police officers under their authority — as well as some from the county, and some from the State — to stalk and attempt to intimidate AMACHER. These officers then extensively wasted taxpayer resources to document AMACHER's peaceful, non-criminal activities in a civil lawsuit, watching her as she she drove her children to school, went to work, and frequently stayed at the homes of relatives.

38) At the quo warranto trial, the government paraded its waste of taxpayer resources as a badge of honor, even suggesting that it would somehow get a judgment against AMACHER to cover these costs.

39) Finally, at trial, the prosecution also went out of its way to embarrass AMACHER, questioning her for example about income taxes and about her sex life.

40) In closing argument, the District Attorney even asked not just to remove AMACHER from the Board of Alderman, but to ban her outright from City Hall.

41) On March 17, 2023, the Coffee County Chancery Court rather predictably ruled that AMACHER was indeed a legal resident of Tullahoma. The court dismissed the quo warranto suit.

42) By this time, AMACHER had incurred many tens of thousands in legal fees defending her name and her position.

43) By this time, AMACHER had also suffered a great deal of emotional distress, public ridicule, and loss of enjoyment of life.

44) All the wrongdoing described herein was committed intentionally, maliciously, or wantonly, so as to warrant punitive damages.

45) AMACHER had a property interest, liberty interest, or both in her political position as alderman of the CITY OF TULLAHOMA.

46) Defendants MOODY, KNOWIS, and CITY OF TULLAHOMA acted under color of law, with each being either a government official or government entity.

47) Also, Defendants MOODY, KNOWIS, VAN VELSOR, and WOODARD acted under color of law by conspiring with government entities (including not only MOODY and KNOWIS, but also the District Attorney) to violate the Plaintiff's rights. *See Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

# CLAIMS FOR RELIEF

## COUNT I

## INFRINGING THE FREEDOM OF SPEECH

## 42 U.S.C. § 1983

### *(All Defendants)*

48) The other sections are incorporated by reference.

49) By retaliating (or conspiring to retaliate) against the Plaintiff for her protected speech, and by doing so in ways that could deter a person of ordinary firmness from speaking out, Defendants MOODY, KNOWIS, VAN VELSOR, and WOODARD violated the Plaintiff's right to free speech as guaranteed by the First Amendment. They did so under color of law.

50) The CITY OF TULLAHOMA is liable for the wrongdoing of MOODY because she is a final policymaker for the City. Most notably, by contract the Tullahoma Board of Mayor and Aldermen expressly gave the MOODY authority to command the City Attorney on all legal matters, and generally to take whatever legal action she saw fit, without further approval from the Board.

51) In addition, formal city policy and city practice made MOODY a final policymaker for acts taken by the Tullahoma Police Department (as well as other departments), over which she exerted final administrative control. She then used this control to send the police after Amacher, as described above.

52) The CITY OF TULLAHOMA is also liable for the wrongdoing of KNOWIS because he was also a final policymaker for the City. Most notably, he had final control over proceedings carried out by the Board of Commissioners — such as the decision to let the District Attorney appear and bully Amacher — and he had supervisory power over the Police Chief and other department heads (albeit less expansive power than MOODY's).

## COUNT II

## MALICIOUS PROSECUTION

### Tennessee Common Law

### *(Moody, Knowis, Van Velsor, Woodard)*

53) The other sections are incorporated by reference.

54) By suing (or conspiring to sue) the Plaintiff without probable cause, and with malice, in a proceeding that terminated favorably for her, Defendants MOODY, KNOWIS, VAN VELSOR, and WOODARD committed malicious prosecution.

## **JURISDICTION**

55) This federal Court has subject-matter jurisdiction under 28 §§ 1331 and 1367 because the Complaint raises federal questions, namely federal civil rights claims, and because any state-law claims are part of the same nucleus of fact.

11

56) This Court in Tennessee has personal jurisdiction because the Defendants are all citizens of Tennessee.

57) Venue is proper in the Eastern District of Tennessee (Winchester Division) because most of the acts took place here, namely in Coffee County.

## **RELIEF SOUGHT**

PREMISES CONSIDERED, Plaintiff Jenna Amacher prays for the following:

i) A jury trial;

ii) $500,000 in compensatory damages;

iii) Additional punitive damages to be set by the trier of fact (only against the Defendants who are individuals, not the City of Tullahoma);

iv) Reasonable attorney's fees, per 42 U.S.C. § 1988; and

v) Any further relief that the Court finds appropriate, such as the taxation of costs to the Defendants.

Respectfully submitted,

/s/ Drew Justice
Drew Justice #29247
Attorney for Jenna Amacher
1902 Cypress Drive
Murfreesboro, TN 37130
(615) 419-4994
drew@justicelawoffice.com

## Certificate of Service

The undersigned lawyer certifies that this December 20, 2024, he has delivered this document via the E-Filing system to Robert Burns, 3310 West End Ave, Suite 550, Nashville, TN 37203 <rburns@howell-fisher.com>; and Daniel Headrick, 900 South Gay St, Nashville, TN 37902 <dheadrick@kaygriffin.com>.

/s/ Drew Justice
Drew Justice #29247
