**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Kelly L. Stephens
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: June 25, 2026

Mr. Robert M. Burns
Ms. McKenna Williams
Howell & Fisher
3310 West End Avenue, Suite 550
Nashville, TN 37203

Mr. Matthew J. Evans
Mr. Daniel C. Headrick
Johnson Evans & Headrick
900 S. Gay Street, Suite 1810
Knoxville, TN 37902

Mr. Paul Andrew Justice III
Justice Law Office
1902 Cypress Drive
Murfreesboro, TN 37130

Re: Case No. 25-5917, *Jenna Amacher v. City of Tullahoma, TN, et al*
Originating Case No. 4:23-cv-00040

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

cc: Ms. LeAnna Wilson

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0183p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

JENNA AMACHER,
*Plaintiff-Appellant*,

*v*.

CITY OF TULLAHOMA, TENNESSEE; JENNIFER MOODY; RAY KNOWIS; SCOTT VAN VELSOR; JIM WOODARD,
*Defendants-Appellees*.

No. 25-5917

Appeal from the United States District Court for the Eastern District of Tennessee at Winchester.
No. 4:23-cv-00040—Travis Randall McDonough, District Judge.

Argued: June 3, 2026

Decided and Filed: June 25, 2026

Before: SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

## COUNSEL

**ARGUED:** Drew Justice, JUSTICE LAW OFFICE, Murfreesboro, Tennessee, for Appellant. McKenna G. Williams, HOWELL & FISHER, PLLC, Nashville, Tennessee, for Appellees City of Tullahoma, Jennifer Moody, and Ray Knowis. Daniel C. Headrick, JOHNSON EVANS & HEADRICK, P.C., Knoxville, Tennessee, for Appellees Jim Woodard and Scott Van Velsor. **ON BRIEF:** Drew Justice, JUSTICE LAW OFFICE, Murfreesboro, Tennessee, for Appellant. McKenna G. Williams, Robert M. Burns, HOWELL & FISHER, PLLC, Nashville, Tennessee, for Appellees City of Tullahoma, Jennifer Moody, and Ray Knowis. Daniel C. Headrick, Matthew J. Evans, JOHNSON EVANS & HEADRICK, P.C., Knoxville, Tennessee, for Appellees Jim Woodard and Scott Van Velsor.

---

**OPINION**

---

SUTTON, Chief Judge. Jenna Amacher served as an alderman on the City Council of Tullahoma, Tennessee. After she sold her home in the City and started living outside the city limits, the district attorney and two residents challenged her eligibility for office in Tennessee court based on the City's residency requirement. When their effort failed because Amacher had done "just enough" to show that she planned to return to the City in the future, R.86 at 71, Amacher sued the two citizens, the City's mayor, and its administrator for retaliating against her for her political and other speech. The district court granted summary judgment to the defendants. Because probable cause supported the quo warranto petition, it does not provide a cognizable basis for a First Amendment retaliation claim in this setting. We affirm.

I.

In August 2020, the people of Tullahoma elected Amacher to a three-year term as an alderman. Amacher did not hide from controversy, whether in that role or outside of it. One example: She opposed a local redevelopment plan that many local leaders and residents supported. Another example: She took more conservative political positions than her fellow aldermen. Still another example: She posted a photo on Facebook of her and her sister-in-law at a "redneck Christmas party" posing in front of a Confederate flag with a sign that read, "[w]e go together like cocaine and waffles." R.56 ¶ 3; R.86 at 104–05. Her political stances alienated some residents and officials, and the photo "shocked" Tullahoma Mayor Ray Knowis, R.92-2 at 6, and "bother[ed]" City Administrator Jennifer Moody, R.92-1 at 23.

The Tullahoma charter requires aldermen to live within the City and provides that an alderman "vacates" her office by moving her residence outside of the City. R.86 at 21. In February 2021, Amacher sold her home in Tullahoma and moved into her grandfather's former house, which is located outside of the City. For about six months, she did not own any property in the City. In August 2021, Amacher bought an unimproved lot in the City, on which she planned to build a new house. But the plan did not come to fruition for some time. She started

construction in the Fall of 2021, suffered delays due to a tornado, then experienced further delays due to the Covid-19 pandemic. Construction did not begin in earnest until early 2023. In the meantime, Amacher continued to live outside of the City, between at least February 2021 and March 2023, while remaining an alderman.

In February 2022, Amacher ran for a seat on the county commission and listed her house-free property in the City as her residence. The designation raised the suspicion of the county election commissioner who questioned whether Amacher lived in the district. The commissioner told Moody, the city administrator, about Amacher's uncertain residency status. In May 2022, Amacher lost the primary election for the county commission seat.

Even so, a local resident, Scott Van Velsor, collected 270 signatures to ask the district attorney to investigate Amacher's residency because she continued to serve as a Tullahoma alderman. In October 2022, with the support of several citizens, the district attorney sought a writ of quo warranto from a Tennessee state court, requesting Amacher's removal from office due to her lack of residency in the City. In December, the district attorney amended the petition to name Van Velsor as the relator and another Tullahoma resident, Jim Woodard, as the guarantor for a $500 bond to cover court costs if the petition failed.

The Tennessee court found Amacher's claims of living on the undeveloped plot of land in the City "unconvincing and damaging to her credibility." R.86 at 70. But that did not end the inquiry. Tennessee law, the state court explained, deems someone a resident of a city so long as they intend to return there. *See* Tenn. Code § 2-2-122(a)(4). That legal test prompted this factual question: Did Amacher intend to move back to the City? On that score, Amacher did "just enough" by trying to build a habitable residence on her lot to "manifest her intent to" live in the City again. R.86 at 71. The court found that she remained a Tullahoma resident and denied the petition.

Amacher's victory did not bring peace. After the state court's ruling, Amacher sued the City, Knowis, Moody, Van Velsor, and Woodard for retaliating, and conspiring to retaliate, against her for exercising her free-speech rights under the First (and Fourteenth) Amendment. *See* 42 U.S.C. § 1983. She added a state law malicious prosecution claim against the individual

defendants. The defendants moved for summary judgment. The district court granted it, concluding that Amacher failed to show that the defendants conspired to file the quo warranto petition or that they sought to retaliate against her federally protected speech. After dismissing the federal claim, the court declined as a matter of discretion to resolve her state law claim for malicious prosecution, permitting Amacher to file it in state court.

## II.

### A.

To show that the defendants retaliated against her exercise of First Amendment rights, Amacher must establish at a minimum that she engaged in protected speech, that she experienced an "adverse action," and that opposition to her speech by the defendants caused the adverse action. *DeLanis v. Metro. Gov't of Nashville & Davidson Cnty.*, 160 F.4th 732, 742 (6th Cir. 2025). Additional requirements come into play if the claimant bases her First Amendment retaliation claim on a legal action taken against her by the government. If the adverse action allegedly prompted by the claimant's free speech was a criminal prosecution or an arrest by law enforcement officers, for example, the claimant must show the absence of probable cause as an element of the claim. *Hartman v. Moore*, 547 U.S. 250, 258–59, 261 (2006) (prosecution); *Nieves v. Bartlett*, 587 U.S. 391, 401–02 (2019) (arrest).

At stake today is whether a no-probable-cause requirement applies in the context of the quo warranto petition that the district attorney filed against Amacher. We conclude that it is an element of the claim that the plaintiff must prove.

When Congress enacted § 1983 in 1871, "there was no common law tort for retaliatory" government actions "based on protected speech." *Nieves*, 587 U.S. at 405. That requires us to look "to the common law torts that provide the 'closest analogy' to [a] retaliatory" quo warranto petition. *Id.* (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)).

A common law malicious prosecution claim offers the best analogy to a quo warranto action. At common law, and today, a malicious prosecution claim challenges the "wrongful institution of legal process." *Id.* (emphasis deleted) (quotation omitted). That action in material

ways parallels Amacher's claim that the defendants improperly initiated the quo warranto petition against her. A quo warranto action forces an officeholder to answer (in English) this question: By what right do you hold this position? Black's Law Dictionary (12th ed. 2024). In the absence of a satisfactory answer—because, say, the individual does not meet the qualifications for office—the officeholder loses the position. Tenn. Code § 29-35-116. While this civil action, if successful, would not lead to a criminal sentence, it would have serious consequences for the individual and for the community: removal of a democratically elected official from office. Whether it is misuse of the government's power to criminally prosecute someone or to unfairly remove them from office, both situations turn on government officials who misuse their power to take action on behalf of a community against an individual in the community.

Amacher's own actions in this case confirm the comparison. The only state law claim that Amacher continues to pursue in this case is a state law tort claim for malicious prosecution. In addition to her § 1983 claim, she sued the defendants for common law malicious prosecution based on the same allegations underlying her free-speech retaliation claim. Even in a free-speech case, actions usually speak louder than words.

Amacher thus must meet the elements of a common law malicious prosecution claim. At common law, as well as today, a malicious prosecution claim required the claimant to disprove that probable cause supported the allegedly retaliatory action. *Nieves*, 587 U.S. at 405–06. Amacher must do the same to succeed on her retaliation claim.

Another analogous common law tort, for what it is worth, supports this no-probable-cause requirement. The common law provided a claim based on "wrongful civil proceedings." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62 (1993); *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1308–09 (11th Cir. 2019). Much like Amacher's First Amendment claim, this tort involved a complaint that the defendant baselessly sued the plaintiff for an "improper, malicious purpose." *Pro. Real Est. Invs.*, 508 U.S. at 62. And much like malicious prosecution, this tort required a plaintiff to prove that the challenged lawsuit "lacked probable cause." *Id.*

Other considerations reinforce this conclusion. Whether the district attorney had probable cause to bring this quo warranto petition provides "a distinct body of highly valuable circumstantial evidence available and apt to prove or disprove retaliatory causation" in all cases based on an allegedly retaliatory civil action. *Hartman*, 547 U.S. at 261; *see Nieves*, 587 U.S. at 400. That is particularly true when the underlying adverse action by the government involves the actions of an independent third party. *Hartman*, 547 U.S. at 261–63. Just as the government investigators sued in *Hartman* acted through a third party (the prosecutor) to bring the allegedly retaliatory prosecution, the defendant citizens and public officials in this case allegedly worked through a third party (the Tullahoma district attorney) to file the quo warranto petition against Amacher. *Id.* at 262–63; *see also DeMartini*, 942 F.3d at 1304. In *Hartman*, as in this case, the claimant did not sue the prosecutor because prosecutorial immunity applies to the decision whether to bring the action. 547 U.S. at 261–62. The same complications that surround a free-speech retaliation claim arising from the actions of a third party to prosecute someone occur in an action premised on the decision of a third party to bring a quo warranto action. *Id.* In both settings, a no-probable-cause imperative justifiably undergirds each claim.

All of this makes particular sense in a case in which *a government official sues citizens* on free-speech retaliation grounds. Surely those citizens have free-speech rights of their own, including the right to challenge on reasonable grounds whether an officeholder meets the requirements of office. Any other approach would enable Amacher—after taking a provocative stand on an issue of the day—to transform the First Amendment's "shield" for free speech into a "sword" an elected official could wield against political opponents. *Whiting v. City of Athens*, 170 F.4th 439, 452 (6th Cir. 2026). Take today's setting. Without a no-probable-cause requirement, this lawsuit would allow an elected official to punish political opponents, including citizens, for exercising their First Amendment right to petition a state court. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011); *but see id.* at 403 (Scalia, J., concurring in the judgment in part and dissenting in part) (doubting whether the right to petition extended beyond the executive and legislative branches to the courts). Who, it is fair to ask, is retaliating against whom in this situation?

Consistent with the common law, a claimant like Amacher must show that the allegedly retaliatory lawsuit lacked probable cause. *See Nieves*, 587 U.S. at 400; *Hartman*, 547 U.S. at 263; *DeMartini*, 942 F.3d at 1304; *see also Knology, Inc. v. Insight Commc'ns Co.*, 393 F.3d 656, 658 (6th Cir. 2004) (noting that *Noerr-Pennington* immunity, which contains a similar probable cause requirement, may extend beyond antitrust actions to § 1983 claims); *Pro. Real Est. Invs.*, 508 U.S. at 59, 62 n.7; *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961); *Cox v. Ruckel*, No. 23-5698, 2025 WL 2603787, at *14 n.7 (6th Cir. Sept. 9, 2025). To establish a lack of probable cause, Amacher must demonstrate that the defendants did not have "a reasonable belief" that the quo warranto action had even "a chance" of succeeding. *Pro. Real Est. Invs.*, 508 U.S. at 62–63 & n.7 (quotation omitted); *see DeMartini*, 942 F.3d at 1301. Probable cause exists, and Amacher's First Amendment claim fails, so long as there was a "probability or substantial chance" that the Tennessee court would find that Amacher forfeited her eligibility for office. *See Alford v. Deffendoll*, 165 F.4th 490, 497 (6th Cir. 2026) (quotation omitted). That is not a "high bar." *Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)); *see DeMartini*, 942 F.3d at 1301.

B.

Judged by these standards, Amacher's claim fails. She has not shown that the quo warranto petition lacked probable cause. She points to her opposition to the redevelopment plan, her voting record as an alderman, her Confederate-flag photo and accompanying statements, her criticism of Tullahoma officials, and her partisan affiliation as protected speech. And she points to the quo warranto petition as an adverse action taken in response to that speech. (More on the adverse action requirement in a few pages.) Even if we accept these premises of her claim—protected speech followed by an adverse action—the claim snags on the imperative of showing that the quo warranto petition lacked probable cause.

The quo warranto petition sought to challenge Amacher's eligibility to serve as an alderman based on reasonable concerns about her residency. Although the petition failed, it presented a fair ground for disqualifying her, as the state judge acknowledged. Recall that the City's charter required Amacher to remain a resident of the City to retain her office. She sold her only home in the City, moved outside of the City limits, and did not own any property in the

City for six months. Even when she bought a vacant lot, she did not begin meaningful construction of the home for a year and a half. That "plodding effort" to build a house in the City, the Tennessee court found, was "just enough" to show that she intended to return. R.86 at 71. She added to the uncertainty about her residency in the interim by refusing to say where she lived and by dubiously claiming she spent a significant number of nights on the unimproved lot. The Tennessee court agreed that Amacher's lack of "transparency" about where she lived contributed to the "trouble" with establishing her residency. R.86 at 71.

These realities combine to show that the citizens and public officials could fairly doubt that she intended to return to the City. The quo warranto petition, though unsuccessful, presented a serious and legitimate reason for challenging her eligibility. *See Pro. Real Est. Invs.*, 508 U.S. at 62–63 & n.7; *see DeMartini*, 942 F.3d at 1301. There was, in short, probable cause to support it. We do not, and should not, lightly penalize the efforts of citizens, or for that matter government officials, to challenge the bona fides of an elected official's debatable claim to office.

Amacher responds along several lines, none altering this conclusion. She argues that the quo warranto petition should not receive a presumption of regularity, as the criminal prosecution did in *Hartman*, due to the independent role of the prosecutor in initiating the prosecution at issue in *Hartman*. *See Hartman*, 547 U.S. at 262–63. This argument runs into two obstacles. First, the Tullahoma district attorney did approve the quo warranto petition against Amacher, mirroring this aspect of *Hartman*. Tenn. Code § 29-35-101, -109, -110 (quo warranto petitions may be brought "in the name of the state" "at the relation of a private individual"); *Heredia v. Gibbons*, 2019 WL 3216623, at *4 (Tenn. Ct. App. July 17, 2019) (Tennessee law "does not authorize private individuals to bring suit in the nature of a quo warranto proceeding."). Second, the independent role of a prosecutor is not the Rosetta Stone that Amacher claims it is. The no-probable-cause requirement applies equally to retaliatory arrest claims, the Supreme Court has made clear, and they do not involve the participation of an independent prosecutor. *Nieves*, 587 U.S. at 402.

Even if probable cause pierces free-speech retaliation claims in this setting, Amacher adds, no probable cause in fact supported the quo warranto petition. She points out that

Tennessee law does not define residency based solely on where one currently lives but also on one's future intent to return to a place. *See* Tenn. Code § 2-2-122(a)(4). True. But that shows only that this case turns on a contested factual question about Amacher's intent. Reasonable minds could fairly view the relevant facts differently. She did not own any property in the City for months. After eventually buying some property, she then took well over a year to begin sustained progress on a house in the City. All the while, she maintained that she lived on a lot without a home, leading to understandable doubts about her authentic plans. These facts all suffice to sink her claim that no probable cause existed for the quo warranto action.

Amacher persists that she always publicly maintained that she intended to move back within the City limits. But she provides no good reason why the defendants had to take her word for it. In view of her evasive and dubious residency claims, she gave the citizens and public officials legitimate grounds for doubting her statements on the matter. Unlike a college student staying in a dorm during the semester or a soldier deployed overseas, as she analogizes her situation, Amacher gave the people of the City reason after reason to doubt her future plans. The state court acknowledged as much when it found that Amacher had "damaged[ed] . . . her credibility" by her actions and statements and that the intent question came down to a close call in which Amacher had done "just enough" to maintain her residency and keep her seat. R.86 at 70–71. The evidence shows that the defendants had "a reasonable belief" that the petition had at least "a chance" of succeeding. *Pro. Real Est. Invs.*, 508 U.S. at 62–63 (quotation omitted); *see DeMartini*, 942 F.3d at 1301. Once the defendants' lawsuit is shown to be premised on reasonable grounds, it makes no difference whether the citizens' and public officials' decision to file the lawsuit was also motivated by free-speech, or for that matter political, retaliation. *See Hartman*, 547 U.S. at 265–66; *Nieves*, 587 U.S. at 401–04, 408; *DeMartini*, 942 F.3d at 1304.

Amacher falls back on a different district attorney's decision not to pursue criminal voter-fraud or fraud-on-the-public charges against Amacher stemming from her failed campaign for a county commission seat. But the discretionary decision of one prosecutor not to file criminal charges, especially after the issue became partially "moot" when Amacher lost the county commissioner primary, does not indicate that another district attorney lacked probable cause to challenge her residency in a quo warranto petition. R.92-1 at 32.

C.

A few words are in order about a few issues that we leave untouched. Amacher does not claim that any defendant dangled the quo warranto petition over her head to coerce her speech or manipulate her work on the city council. Such a claim might more closely resemble the common law tort of abuse of process, which may be filed in response to a claimant who has an improper "ulterior" motive in using a legitimate legal proceeding and who has no intent to prevail in it. *See Bickerstaff v. Lucarelli*, 830 F.3d 388, 399–400 (6th Cir. 2016); *see also Givens v. Mullikin ex rel. Est. of McElwaney*, 75 S.W.3d 383, 400 (Tenn. 2002). In that setting, probable cause may not provide a complete defense, *see Bickerstaff*, 830 F.3d at 400, as it clearly does in a free-speech retaliation claim that more closely resembles a claim for malicious prosecution or wrongful use of civil proceedings.

Amacher does not claim that the public-official defendants unequally enforced the residency requirement, filing a quo warranto petition only against Amacher but not against other elected officials facing similar question marks about their residency. *See Nieves*, 587 U.S. at 407 ("[T]he no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.").

Amacher does not claim that the quo warranto petition emerged from an official policy to retaliate against her proved by indisputable "objective evidence." *Lozman v. Riviera Beach*, 585 U.S. 87, 99–101 (2018) (retaliatory arrest claimants do not need to disprove probable cause when a series of extraordinary circumstances converge).

Last reservation of all: We save for another day whether a fair-grounded effort to unseat an elected official amounts to an "adverse action" in the first place. The answer is not obvious in view of the twin American tenets that "legislative power . . . belongs to the people," and individual legislators have "no personal right to it." *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 125–26 (2011); *see also Doe v. Reed*, 561 U.S. 186, 220–23 (2010) (Scalia, J., concurring in the judgment) (finding "no precedent from this Court holding that legislating is protected by the First Amendment").

III.

Amacher separately challenges one of the district court's discovery rulings. She argues that she needed more time to complete discovery because she missed the opportunity to depose three witnesses. The district court denied a joint motion to extend discovery by two months as well as a follow-up motion by Amacher for an unspecified amount of extra time. Parties may ask a district court to modify a scheduling order "only for good cause." Fed. R. Civ. P. 16(b)(4). We review a district court's scheduling order for abuse of discretion, appreciating the "wide discretion" that trial judges have "to manage their own dockets." *Taylor v. Bristol-Myers Squibb Co.*, 93 F.4th 339, 349 (6th Cir. 2024) (quotation omitted).

No abuse of discretion occurred. The district court set its initial scheduling order in March 2024, giving the parties a year to complete discovery by March 3, 2025. In January 2025, the court granted a two-and-a-half-month extension to May 19. The parties asked to change that deadline again just a week before it expired. The district court rejected the motion.

The problem for Amacher is that she had plenty of time to complete discovery and to take depositions before then. Her inability to complete the task in the 14 months available reflects her lack of diligence, not the fault of the district court for standing by its schedule to ensure the case proceeded efficiently and consistent with Rule 1 of the Federal Rules of Civil Procedure. *See Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625–26 (6th Cir. 2002).

Amacher responds that the defendants caused the discovery delays. She says that they took months to respond to a document request and adds that their eventual answers proved inadequate. But this contention by itself does not explain why she could not take the relevant depositions.

Amacher, at all events, caused delays of her own in proceeding haltingly to address the defendants' delay. Amacher sent her document requests to the defendants in October 2024 but did not move to compel a full response until May 5, 2025, just two weeks before the already postponed discovery deadline. She admits that she was not "maximally diligent," Appellant's Br. 37, in pursuing the documents that somehow delayed the depositions and that she shared responsibility for "conduct[ing] discovery too slowly," R.82 at 4. That undercuts her effort to

show good cause for delaying the case still more. And that makes it difficult to show that the court abused its discretion in finding that "her delay and her failure to use motions practice available to her during the discovery period" served as the "primary cause" of her failure to hold all the depositions she had planned. R.89 at 3.

Appellate courts should commend district courts, not criticize them, when they honor the mandate to "secure the just, speedy, and inexpensive determination" of cases brought before them. Fed. R. Civ. P. 1. It is never "just" to enable slow and expensive litigation. Discovery without end, or more fairly discovery without reasonable ends, drives up the costs of litigation, impedes the prompt resolution of disputes, and incentivizes citizens to rely on other forms of dispute resolution to handle their disagreements. The district court fairly and commendably handled this discovery dispute.

We affirm.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 25-5917

JENNA AMACHER,

Plaintiff - Appellant,

v.

CITY OF TULLAHOMA, TENNESSEE; JENNIFER MOODY; RAY KNOWIS; SCOTT VAN VELSOR; JIM WOODARD,

Defendants - Appellees.

**FILED**
Jun 25, 2026
KELLY L. STEPHENS, Clerk

Before: SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk